Nancy R. SWEENEY, Plaintiff–
Appellant,

v.

Togo D. WEST, Jr., Secretary, Dept. of
the Army, Defendant–Appellee.

No. 97–2495.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 13, 1998.

Decided June 29, 1998.

Stephanie J. Hahn, Indianapolis, IN, for Plaintiff–Appellant.

Judith A. Stewart, Office of the U.S. Atty., Indianapolis, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and MANION and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Nancy Sweeney claims that her superiors in the United States Army discriminated against her on the basis of her sex and retaliated against her for complaining about her treatment. The Army's EEO officer sided with Sweeney on the retaliation issue, but the Army—as it is entitled to do under the law—reversed that decision. Sweeney then filed suit in the district court, which discounted much of her evidence of discrimination because it fell outside the 30–day time limit imposed by the regulations accompanying Title VII. The court granted summary judgment to the Army with respect to each of Sweeney's claims. We affirm.

## I.

Nancy Sweeney began her career as a civilian employee with the Department of the Army in 1973. We do not know her entry-level position because neither party has chronicled her career path. What we do

know is that in 1986 the Army appointed her to the position of reserve technician (and Unit Administrator) in its Camp Atterbury, Indiana facility. In 1988, Sweeney filed a complaint with the Army's EEO office (every government agency must have an EEO officer on duty to handle charges of discrimination, see 29 C.F.R. § 1614.104–05). Sweeney complained that one of her superiors, Lieutenant Colonel Gordon Satkowiak, had invaded her personal locker, thereby discriminating against her on the basis of her sex. The parties settled the case in 1990, though again neither side has disclosed the exact terms of the settlement,[1] or whether they settled the case at the agency level as opposed to the EEOC (a complainant may appeal an agency's final decision to the Commission, see 29 C.F.R. § 1614.401). The 1988 complaint and subsequent settlement are important because Sweeney claims that in later years the Army retaliated against her for raising her claim in the first place.

In September 1990 (around the same time the parties settled Sweeney's initial charge of discrimination), the Army hired Jennifer Swanson as a Staff Operations Training Specialist at Camp Atterbury. Swanson became Sweeney's supervisor. Sweeney had applied for the position but was not hired. Everything apparently was going all right until February 1991; Sweeney claims that Satkowiak went into her office while she was on leave. Sweeney wrote to the Major General in command about the incident, and a meeting took place in which Sweeney was reprimanded for not going through the proper chain of command. Sweeney claims that after the meeting Swanson approached her in the ladies' room and commented on Sweeney's 1988 EEO complaint involving Satkowiak; Swanson purportedly added that no one liked Sweeney.

Between late July and mid-September 1991, Sweeney contacted the Department of the Army's Inspector General's office and alleged time card fraud on the part of her supervisor, Swanson. The record is not clear but the IG apparently found no wrongdoing on the part of Swanson. According to Swanson, Sweeney had her own pay problems. Swanson issued two counseling statements to Sweeney relating to double pay Sweeney purportedly had received, unsatisfactory job performance in failing to correct a payroll problem of an officer, and "behavior [that] is unbecoming of a civilian employee of the federal government." This last charge related to an incident in which Sweeney allegedly bragged that she could get Satkowiak fired.

Sweeney viewed the counseling statements as retaliation for her earlier complaints about Satkowiak and Swanson. On October 11, 1991, she contacted the appropriate EEO officer and after interviewing and counseling followed up in February 1992 with a formal charge of discrimination against the Army. In that complaint, Sweeney claimed several acts of retaliation, including the incident in February 1991 in which Satkowiak went into her office, a separate incident in which Sweeney had been accused of making a racial comment about a black major, and the counseling statements issued by Swanson. The EEO officer referred Sweeney's case to the Army's Appellate Review Agency, which found that Swanson's two counseling statements constituted reprisal and retaliation. The Army reversed that decision and issued a final agency decision of no discrimination, and the EEOC (acting upon Sweeney's appeal) affirmed. Sweeney then filed her suit in the district court, claiming sex discrimination, retaliation, and constructive discharge (as well as one pendent state common law claim). The constructive discharge claim relates to her resignation from the Department of the Army in 1993; Sweeney claims that the Army forced her to resign in the face of a hostile work environment.

The district court granted summary judgment in favor of the Army. The court noted that most of Sweeney's evidence in support of her claims occurred outside the 30–day period prescribed by Title VII and the regulations supporting that law. In particular, Sweeney did not comply with the requirement that she consult her agency's EEO officer within 30 days of the alleged discrimi-

---

1. Sweeney does not elaborate when she tells us that she "prevailed" on her charge; the Army claims that it settled the case without a finding of discrimination or an admission of liability.

nation.[2] The counseling statements occurred within the 30–day window, but the court considered them neither retaliatory nor capable of being labeled a "constructive discharge." On appeal, Sweeney argues that much of her evidence of a hostile work environment, while outside the 30-day cutoff imposed under the law, was accumulating before she was put on notice that she had a viable claim of discrimination. According to Sweeney, she had no reason to believe she had a potential claim until the Army issued its counseling statements.

## II.

■ To determine whether a plaintiff can survive a motion for summary judgment in an employment discrimination case, courts apply certain time-tested formulas. No admission of guilt by the defendant is necessary, *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994), but the plaintiff must at least raise an "inference of discrimination." *Kariotis v. Navistar*, 131 F.3d 672, 676 (7th Cir.1997). It is not unusual for any employee to have been treated differently in some fashion. The real issues are (1) what prompted the purported difference in treatment (was it the individual's sex or—in the case of retaliation-protected activity of some sort?), and (2) did the difference in treatment affect the employee's "compensation, terms, conditions or privileges of employment." *See* 42 U.S.C. § 2000e–5(g). If there is enough evidence for a reasonable jury to conclude that the plaintiff's sex or protected activity prompted the disparate treatment (and that the treatment affected the plaintiff's employment in a tangible way), then the case is suited for trial, not summary judgment.

■ In this case Sweeney claims both sex discrimination and retaliation. As a rule we consider them separately because under Title VII it is unlawful to retaliate against an employee even if the employee's complaints of sex discrimination (giving rise to the retaliation) are unfounded. The complaints themselves are protected speech under Title VII's terms, see 42 U.S.C. § 2000e–3(a), meaning

an employee may complain (in good faith) without the added burden of having to be right. But in this case Sweeney makes almost no effort to distinguish her claims of discrimination and retaliation. For example, in support of her discrimination claim, Sweeney alludes to a "hostile work environment," but she uses that same term to describe how the Army acted once she complained about its discrimination. Indeed, nearly her entire appellate brief is devoted to documenting the Army's retaliation rather than the underlying discriminatory acts giving rise to her complaints in the first place. Now we are left to parse out a sex discrimination claim from what in all respects looks like a simple case of alleged retaliation.

■ Identifying Sweeney's claim of sex discrimination itself is perplexing. At one point in her appellate brief she ties her claim to her non-promotion and early retirement, but in most of her argument (and throughout her representations to the district court) she bases her claim on an "impermissible hostile work environment." Any challenge to the Army's 1990 decision to hire Swanson instead of promoting Sweeney clearly is time-barred; at the time, the Regulations gave an employee only 30 days to complain about discriminatory conduct, and Sweeney allowed years to pass by without formal comment. The hostile work environment claim is unusual because it is a term of art typically associated with sexual harassment. Sweeney appears not to be claiming that she was *sexually* harassed; indeed, no sexual comments (either overt or covert) were directed at her. She nevertheless relies on sexual harassment cases, at one point citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), apparently in order to draw an analogy between herself and the plaintiff in that case: "Like the Plaintiff in *Harris*, Ms. Sweeney is a victim of a hostile work environment that is less easily detectable when compared to outright sexual harassment." Unlike Sweeney, however, Harris claimed to be a victim of actual sexual harassment (there is no legal distinction be-

---

**2.** The regulations now provide for a 45–day period, 29 C.F.R. § 1614.105(a)(1), but Sweeney's claim arose before Congress relaxed this provi-

sion. Sweeney concedes that the 30–day requirement applies to her case.

tween "outright" harassment and some other form). The president of Harris' company often insulted her because of her sex and made her the target of unwelcome sexual innuendos. 510 U.S. at 19, 114 S.Ct. 367. At one point he suggested that the two of them "go to the Holiday Inn to negotiate [Harris'] raise." *Id.* On other occasions he asked Harris and her female coworkers to get coins from his front pants pocket. *Id.* Such conduct is a far cry from what Sweeney encountered. The harassment she alleges involves no sexual remarks or conduct whatsoever.

█ Of course workplace abuse does not *have* to be sexually explicit or suggestive to violate Title VII. A Title VII violation could occur if the abuse altered the plaintiff's working conditions and was directed at members of one sex but not the other. The statutes and case law clearly prohibit disparate treatment between sexes. But here not only is there no disparate treatment, there is no evidence of abuse of any kind. The record does reveal that Swanson purportedly told Sweeney that no one liked her, but that can hardly be called abusive, even if it were not true. More fundamentally, even if we assumed that Sweeney experienced hostility capable of altering her working conditions and making her work environment abusive, we search the record in vain for anything tying that (mis)treatment to her sex.[3] *See Oncale v. Sundowner Offshore Services, Inc.*, — U.S. —, —, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)). To the contrary, everything tells us that Sweeney was disliked not because she was a woman, but because she disregarded the chain of

command when she complained that Satkowiak went into her office without permission.

█ Sweeney raises another possibility—that she was disliked because she once filed a complaint concerning Satkowiak's conduct; it is the essence of her retaliation claim. In order to state a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). There does not appear to be any dispute that Sweeney engaged in protected expression; in 1988 she filed an EEO complaint after Colonel Satkowiak went through her personal locker. But for some reason it took nearly two years for the parties to reach a settlement concerning Sweeney's charge, and three years before the Army allegedly retaliated against her for filing the charge in the first place.

The first act of "retaliation" supposedly occurred in February 1991, when the Army brass reprimanded Sweeney for not following the chain of command in complaining that Satkowiak went into her office without permission. On another occasion (in April 1991), Swanson accused Sweeney of making racial remarks about a black superior officer. Finally, in October 1991 Swanson issued two "counseling statements" to Sweeney. The first criticized Sweeney for accepting 7 hours of unauthorized overtime and delaying over a month before submitting paperwork necessary so that an officer could receive overdue drill pay. The counseling statement did not discipline Sweeney; rather, it merely recommended that Sweeney more carefully review payroll documents "to ensure all pay received is entitled and all pay due is received." The second counseling statement—issued on the same day as the first—criticized Sweeney for

---

**3.** We note that we had no obligation to engage in this uncharted record search. We have no desire to act as an "auxiliary lawyer" to either party because "[t]he responsibility for the identification, framing, and argument of the issues on appeal is that of the lawyers, not that of the judges." *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 230 (7th Cir.1992); *see also*

Fed. R.App. P. 28(a)(6). We scoured the record in this case, but put the bar on notice that it should not expect such scrutiny to be routine. And it is worth noting that in this case the failure to cite to parts of the record, relevant authority, and critical facts was not just Sweeney's deficiency, but the government's as well.

having bragged that she could get Satkowiak fired "within six months" and trying to place bets with her coworkers to that effect. Again, the letter stopped short of imposing any discipline, but did note that Sweeney was "advised to cease from this type of behavior and conduct" because it affected the "morale. and the work atmosphere of this organization." The letter concluded that any "further complaints of behavior and conduct of this nature will result in disciplinary action."

 The district court (along with the EEOC) considered only the counseling statements because all other alleged incidents of retaliation fell outside the 30–day window allowed to federal sector employees under Title VII. (Sweeney contacted an EEO officer on October 11, 1991, five days after she received the two counseling statements.) Sweeney contends that the other instances of retaliation are not untimely because they represented violations continuing into the 30–day period. A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period. *Dasgupta v. University of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir.1997). Sometimes sexual harassment is actionable under this theory because "duration is often necessary to convert what is merely offensive behavior, and therefore not actionable under Title VII, into an actionable alteration in the plaintiff's working conditions." *Id.* (internal citations omitted). Sweeney's claim is similar to one of sexual harassment in that she contends that the Army created a hostile environment (albeit a non-sexual one) because she filed an EEO complaint about Colonel Satkowiak. According to Sweeney, that complaint triggered a series of retaliatory reprimands and admonishments, culminating in the October 1991 counseling statements.

 The problem for Sweeney is that even if we applied a continuing violations theory to her case, none of the alleged instances of retaliation (either in isolation or in tandem) appear to rise to the level of a materially adverse employment action suffi-cient to satisfy the second prong of the prima facie case. Title VII's "retaliation provision," 42 U.S.C. § 2000e–3(a) (discrimination for making charges), does not say exactly what constitutes retaliation and what doesn't, but obviously there are limits. The undoubted purpose of Title VII's prohibition against retaliation is to prevent employers from discouraging complaints or otherwise chilling the exercise of an employee's rights. A dirty look or the silent treatment might be as effective at discouraging complaints as demoting an employee, *McDonnell v. Cisneros*, 84 F.3d 256, 258 (7th Cir.1996), but the question remains whether each is enough to prompt a federal case. The demotion surely is; the other examples clearly not. The difference is not complicated—Title VII's retaliation provisions make it unlawful to "discriminate" against an employee because he has made a charge of discrimination. Common sense and the examples used in the statute's principal section, 42 U.S.C. § 2000e–2(a), exclude instances of different treatment that have little or no effect on an employee's job. *See* § 2000e2(a) (making it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment ... or to limit, segregate or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee....").

At most Sweeney has documented instances in which she was unfairly reprimanded for conduct she either did not engage in or should not have been responsible for. Absent some tangible job consequence accompanying those reprimands, we decline to broaden the definition of adverse employment action to include them. This circuit already has concluded that negative performance evaluations, standing alone, cannot constitute an adverse employment action (but could constitute, under the right circumstances, evidence of discrimination). *Smart v. Ball State University*, 89 F.3d 437, 442 (7th Cir.1996). The most significantly "adverse" employment actions in this case are

the two counseling statements, both of which stop short of disciplining Sweeney but do admonish her to improve. The counseling statements are similar to negative performance evaluations, and arguably less significant. If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit; a simple statutory prohibition against retaliation would be turned into a bizarre measure of extra protection for employees who—though they might genuinely need counseling—at one point complained about their employer. We also would be deterring employers from documenting performance difficulties, for fear that they could be sued for doing so. Employees would be left in the dark as to how they could improve their work performance, and employers would be less able to establish the fact that poor performance, rather than some unlawful motivation, prompted a decision to fire, demote, etc.

 But even if we are wrong about this, it is of no help to Sweeney because she also had the burden of pointing to some causal link between any adverse employment action and her protected expression. The obvious place to start is the temporal sequence between the two; oftentimes it is unnecessary to look any further. A "telling temporal sequence" can establish the required nexus, *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir.1989), but by "telling" "we mean that the employer's adverse action follows fairly soon after the employee's protected expression." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998). One day might do it, *see Johnson v. Sullivan*, 945 F.2d 976, 980 (7th Cir.1991); so too might one week. *Holland*, 883 F.2d at 1314–15. Here Sweeney complained to her EEOC officer in 1988, nearly three *years* before the only alleged retaliatory acts within the 30–day limitations period—the October 1991 counseling statements. Even if we were to allow Sweeney to use *all of her evidence outside the limitations* period under a continuing violations theory, the gap would be over two years. Enough said.

 For these multiple reasons, Sweeney failed to establish a prima facie case of retaliation, making the Army's legitimate, nondiscriminatory reasons for its reprimands irrelevant. We note in passing, however, that Sweeney made almost no effort in the district court (or in her appellate brief) to call these reasons into question. One example will do: Sweeney acknowledges that one of her counseling statements related to the fact that she was late on her payroll. On appeal, she does not dispute that she was late, but instead excuses it by noting that her computer malfunctioned and numerous employees had complicated her paperwork by transferring divisions. Establishing pretext requires more than excusing the employer's stated reason for its decision; the plaintiff must call the employer's honesty into question by rebutting the reason given. "In other words, arguing about the accuracy of the employer's assessment is a distraction, *see Brill v. Lante Corp.*, 119 F.3d 1266, 1273 (7th Cir.1997), because the question is not whether the employer's reasons for a decision are 'right but whether the employer's description of its reasons is *honest.*'" *Kariotis*, 131 F.3d at 677 (quoting *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992)). But as we have made clear, for purposes of litigation, the Army's reasons for issuing its counseling statements are irrelevant because Sweeney failed to establish a prima facie case of retaliation.

 That leaves us with Sweeney's claim that her voluntary retirement in July 1993 constituted a constructive discharge, "which occurs when an employee's *discriminatory* working conditions become so intolerable that a reasonable person in her position would be compelled to resign." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir.1997) (emphasis added). At this point it would be hard to find that Sweeney has a viable claim because we already have determined that her working conditions were not discriminatory—specifically, there is insufficient evidence that they existed in retaliation for her EEO complaint, and no evidence of an actionable hostile environment. In other words, an employee can be construc-

tively discharged only if the underlying working conditions were themselves unlawful (i.e., discriminatory in some fashion). *See Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1005–06 (7th Cir.1994) (holding that sex discrimination plaintiff had no viable constructive discharge claim because her working conditions—"even if intolerable"—had nothing to do with her sex). In this case, while Sweeney may have experienced hostility in the workplace (the record reflects that she was not well-liked), there is insufficient evidence that her sex or her protected expression prompted that treatment. Even if her working conditions had become intolerable, they were not intolerable in a discriminatory way.

■ One additional point will do: a constructive discharge claim requires evidence that quitting was the only way the plaintiff could extricate herself from the intolerable conditions. Moreover, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Perry*, 126 F.3d at 1015. Here the record falls far short of describing the kind of repulsive workplace that might compel an employee to resign. Sweeney resigned in July 1993, and by her own account, this was almost two full years after the last reported instance of mistreatment (the October 1991 counseling statements).

In all respects, this case was well-suited for summary judgment. Sweeney provided insufficient evidence (and, in some instances, none at all) to warrant a trial on her sex discrimination, retaliation, or constructive discharge claims. We therefore AFFIRM the district court's grant of summary judgment.