Kathye L. HELGESON, Plaintiff,

v.

AMERICAN INTERNATIONAL
GROUP, INC., et al.,
Defendants.

No. 97–CV–175–JJL–AJB.

United States District Court,
S.D. California.

March 2, 1999.

Order Denying Reconsideration
April 29, 1999.

Michelle A. Perfili, Law office of Michelle Perfili, San Diego, CA, for plaintiff.

James S. Bryan, Arter and Hadden, Los Angeles, CA, P. Kevin Connelly, Connelly, Sheehan and Moran, Chicago, IL (argued), for defendants.

## OPINION

LONGOBARDI, Senior District Judge.[1]

## I. Introduction

Plaintiff Kathye L. Helgeson was employed by American International Group ("AIG"), in their wholly owned subsidiary, American International Group Claims Services ("AIGCS"),[2] from October 1994 until November 1996. Plaintiff originally filed suit in San Diego County Superior Court, but defendants removed the case to this Court. The Complaint contained ten causes of action, including claims for: (1) sexual harassment, (2) retaliation, (3) pretextual constructive discharge, (4) breach of employer's harassment policies (5) breach of implied employment contract, (6) breach of implied contract of good faith and fair dealing, (7) negligence, (8) negligent supervision, (9) intentional infliction of emotional distress, and (10) negligent

---

**1.** The Honorable Joseph J. Longobardi, Senior United States District Judge for the District of Delaware, sitting by designation.

**2.** AIG and AIGCS were both named as defendants. The jury found that AIG was the employer, and this finding is not at issue in these motions.

infliction of emotional distress. Before removal to federal court, the state court dismissed the third and tenth causes of action. This Court granted defendants' motion for summary judgment on the fourth, fifth, sixth, seventh, and eighth causes of action.[3] Immediately preceding trial, plaintiff voluntarily dismissed the first cause of action. Accordingly, the only issues that went to trial were the plaintiff's claims of retaliation and intentional infliction of emotional distress.

A jury trial was held from June 8–15, 1998, at which the jury found for the plaintiff on both claims. The jury made the following findings of fact in its verdict: (1) plaintiff reasonably and in good faith believed she was sexually harassed in violation of the FEHA[4] or the public policy of California; (2) plaintiff, or someone on her behalf, complained or otherwise protested to defendants that she believed she was sexually harassed; (3) defendants took some adverse employment action against plaintiff after she or someone on her behalf complained or protested; (4) the complaints were a motivating factor for defendants' adverse employment action; (5) plaintiff sustained injury, damages, loss or harm as a result of defendants' retaliation; (6) defendants engaged in outrageous conduct; (7) the individuals who engaged in outrageous conduct acted within the scope of their employment; (8) plaintiff suffered severe emotional distress caused by this outrageous conduct; and (9) plaintiff has proven by clear and convincing evidence that any of the individuals who engaged in this conduct are guilty of malice, oppression, fraud or despicable conduct. The jury then awarded plaintiff $350,000 in

economic damages,[5] $650,000 in non-economic damages, and $1,250,000 punitive damages.

Currently pending before this Court are defendants' motions for: (1) Judgment as a Matter of Law Pursuant to Rule 50(b), and (2) New Trial or, Alternatively, Remittitur Pursuant to Rule 59. Also pending is plaintiff's Motion for Attorneys Fees and Costs.

## II. Facts

Briefly summarized, the relevant facts, in a light most favorable to the plaintiff,[6] are as follows: From October 1994 through November 1996, AIG employed Kathye Helgeson as a fraud investigator in the claims division of AIGCS' San Diego office. AIGCS, a wholly-owned subsidiary of AIG, adjusts claims for insurance carriers owned by AIG. On April 3, 1996, plaintiff was engaged in a conversation with Ronnie Austin, a supervisor at AIGCS. In this conversation, plaintiff was acting defensively in response to Mr. Austin's earlier suggestion in a meeting that she needed to handle more claims. Mr. Austin suggested that the two continue the conversation outside, where plaintiff continued to act defensively. At this point, Mr. Austin stated that she should relax, and that she was not being investigated. He then added that "if we caught you in bed with a dead man or a live woman, then we might have to investigate you." Plaintiff reported this comment to David Sossaman, a coworker who had been plaintiff's former direct supervisor. Mr. Sossaman subsequently notified Ken Coleman, Mr. Austin's supervisor.

**3.** United States District Court Chief Judge Marilyn L. Huff made this ruling on January 22, 1998.

**4.** Fair Employment and Housing Act, Cal. Gov't Code § 12940.

**5.** The jury was instructed that plaintiff must prove constructive discharge to receive compensatory damages for time after she resigned. It obviously found that the evidence

supported constructive discharge in order to give such a large award of compensatory, economic damages accounting for approximately 19 years of front pay.

**6.** In a motion for judgment as a matter of law, facts are construed in a light most favorable to the nonmoving party. *See Lambert v. Ackerly,* 156 F.3d 1018, 1021–22 (9th Cir. 1998).

Subsequent to plaintiff's report to Mr. Sossaman, and Mr. Sossaman's report to Mr. Coleman, several events occurred that plaintiff alleged were in retaliation for her reporting Mr. Austin's comment. These events include: (1) AIG threatened to put plaintiff on a work program designed to help her meet critical success goals; (2) Mr. Coleman threatened to lay off plaintiff if she did not transfer to the Costa Mesa office, a threat that AIG rescinded three days later; and (3) defendants assigned several cases to Mr. Sossaman that should have been assigned to plaintiff, although the evidence showed that this practice was occurring before the April incident. Subsequently, at the end of June, plaintiff took a leave of absence from AIG. Plaintiff returned in September, and within two weeks received a verbal reprimand for improperly using her E-mail to spread rumors. Defendant also reprimanded plaintiff for improperly contacting a supervisor in the New York office even though she was expressly given permission to do so. Additionally, Mr. Coleman issued an inaccurate performance review of plaintiff's October performance. Finally, on November 22, 1996, plaintiff resigned from AIG.

## III. Notion for Judgment as a Matter of Law

### A. Standard

Defendants' first motion is for Judgment as a Matter of Law Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. "Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's." *Lambert v. Ackerly*, 156 F.3d 1018, 1021–22 (9th Cir.1998) (citing *Forrett v. Richardson*, 112 F.3d 416, 419 (9th Cir.1997));

*Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir.1994).

The standard for deciding a Rule 50(b) motion "is appropriately strict." The court must determine whether the evidence, viewed in the light most favorable to the plaintiffs, was sufficient to have allowed a reasonable juror to arrive at a verdict for plaintiffs. The court must draw all reasonable inferences in plaintiff's favor, and all questions of credibility must likewise be decided in plaintiffs' favor.... [T]he court should grant the motion only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fairminded men could not arrive at a verdict against him.

*Datskow v. Teledyne Continental Motors Aircraft Products*, 826 F.Supp. 677, 682 (W.D.N.Y.1993) (citing *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir.1988); *Konik v. Champlain Valley Physicians Hosp.*, 733 F.2d 1007, 1013 (2d Cir.1984); *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167–68 (2d Cir.1980)).

### B. Intentional Infliction of Emotional Distress Claim

■ Plaintiff's first cause of action was for intentional infliction of emotional distress. The jury found in plaintiff's favor. The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendants' outrageous conduct.[7] *KOVR–TV, Inc. v. Superior Court,*

---

7. The Court gave the following jury instruction: "The essential elements of [intentional infliction of emotional distress] are: (1) the defendant engaged in outrageous, unprivileged conduct; (2) the defendant intended to

cause plaintiff to suffer emotional distress; (3) the plaintiff suffered severe emotional distress; (4) such outrageous, unprivileged conduct of a defendant was the cause of the emotional distress suffered by the plain-

31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (Cal.Ct.App.1995). Defendants argue that there is insufficient evidence to support the jury's finding of extreme and outrageous conduct.

■ To prove extreme and outrageous conduct, "plaintiff must show that defendant[s'] conduct was outrageous and beyond all bounds of decency." *Berdan v. Ortho–McNeil Pharmaceutical, Inc.*, No. C–96–207–VRW, 1997 WL 811782, at *5 (N.D.Cal. Dec.31, 1997) (citing *Cervantez v. J.C. Penney Co., Inc.*, 24 Cal.3d 579, 156 Cal.Rptr. 198, 595 P.2d 975 (Cal.1979)). The conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76 Cal. Rptr.2d 540 (Cal.Ct.App.1998) (citing and quoting *KOVR–TV*, 31 Cal.App.4th at 1028, 37 Cal.Rptr.2d 431; *Rest.2d Torts*, § 46, comment d). *See also Cabanas v. Gloodt Associates*, 942 F.Supp. 1295, 1311 (E.D.Cal.1996). "In evaluating whether the defendant's conduct was outrageous, it is 'not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Cochran*, 65 Cal.App.4th at

496, 76 Cal.Rptr.2d 540 (quoting *Rest.2d Torts*, § 46, comment d).

The actions upon which plaintiff bases her claim are the adverse employment actions that are also the basis for her retaliation claim. These actions are: AIG threatened to place plaintiff on a work program; AIG did not assign plaintiff a sufficient number of cases with which to meet her critical success goals; Mr. Coleman threatened to lay off plaintiff; an in-house AIG attorney, during an interview with Mr. Sossaman, asked whether Mr. Sossaman and plaintiff were having an affair; AIG issued two verbal reprimands that had no basis in fact; Mr. Coleman issued an inaccurate performance evaluation; Mr. Coleman promised plaintiff he would be there when she returned to work from her leave of absence, but was absent upon her return; and AIG took away assignments that were within plaintiff's territory. (*See* plaintiff's memorandum at 12–13).

■ All of the actions submitted by plaintiff are every-day management decisions. Performance reviews, counseling sessions, lay-off decisions, and work assignments are all decisions that businesses make every day. "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.... If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80, 53 Cal. Rptr.2d 741 (Cal.Ct.App.1996). Even if these decisions were improperly motivated, they fall far short of the necessary standard of outrageous conduct beyond all bounds of decency.

A sampling of cases demonstrates that the conduct in evidence in this case falls

tiff.... Extreme and outrageous conduct is not mere insults, indignities, threats, annoyances, petty oppression or other trivialities. All persons must necessarily be expected to be hardened to a certain amount of language and to occasional acts that are definitely in-

considerate and unkind. Extreme and outrageous conduct, however, is conduct which would cause an average man of the community to immediately react in outrage." (RT at 847–49).

far short of the evidence needed to prove extreme and outrageous conduct. *See, e.g., King v. AC & R Advertising*, 65 F.3d 764 (9th Cir.1995) (under California law, employer's alleged actions against employee did not constitute "extreme and outrageous conduct," and employer thus was not liable for intentional infliction of emotional distress; employer allegedly changed employee's status to at-will, restructured his compensation package, terminated him after he rejected proposal and subsequently rehired him, and made age-related comments); *Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991) (no intentional infliction of emotional distress where plaintiff's evidence showed her supervisor screamed, yelled, and made threatening gestures while criticizing her job performance); *Janken,* 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741 (no intentional infliction of emotional distress for firing in violation of FEHA based on age); *Yurick v. Superior Court,* 209 Cal.App.3d 1116, 1123–30, 257 Cal.Rptr. 665 (Cal.Ct.App. 1989) (comments that plaintiff was over forty and senile did not give rise to claim for intentional infliction of emotional distress); *Trerice v. Blue Cross of California,* 209 Cal.App.3d 878, 257 Cal.Rptr. 338 (Cal. Ct.App.1989) (employer's conduct was not so outrageous as to state claim for intentional infliction of emotional distress, where employer presented plaintiff with termination package that she accepted, withdrew that package and told plaintiff that she was still employed, told plaintiff that position would be eliminated, provided plaintiff with termination package that was less advantageous than original one, and required plaintiff to work during last days of employment performing duties normally performed by persons of lower rank); *Ankeny v. Lockheed Missiles and Space Co.,* 88 Cal.App.3d 531, 536–37, 151 Cal. Rptr. 828 (Cal.Ct.App.1979) (no intentional infliction of emotional distress where plaintiff alleged his employer prevented him from becoming a union steward, trans-

ferred him from job to job, wrongly denied him promotions, assigned him inappropriate job tasks, and personally insulted him). *But see Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (Cal.1970) (African–American employee alleged he was fired in a despicable manner when his supervisor did so while shouting various racial epithets was entitled to damages for intentional infliction of emotional distress); *Rulon–Miller v. International Business Machines Corp.,* 162 Cal.App.3d 241, 255, 208 Cal.Rptr. 524 (Cal.Ct.App.1984) (Evidence supported finding of intentional infliction of emotional distress where company fired plaintiff for dating another employee, even though company had policy of not interfering in private lives of employees. "The combination of statements and conduct would under any reasoned view tend to humiliate and degrade [the plaintiff]. To be denied a right granted to all other employees for conduct unrelated to work was to degrade her as a person."), *disapproved on other grounds, Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (Cal.1988).

The defendants' actions, while possibly demonstrating poor business judgment, are not so extreme and outrageous to justify an award for intentional infliction of emotional distress.[8] The conduct does not rise to that described in *Rulon–Miller* and *Alcorn.* Moreover, defendants' conduct is less extreme than the conduct in *King, Ankeny and Schneider* where the court found no intentional infliction of emotional distress as a matter of law. Here, plaintiff was not insulted, degraded, yelled at, physically threatened, or publicly humiliated. She did not incur any racial slurs, and defendants made no employment decisions based on her personal life. Although defendants carried out their business decisions in a manner offensive to plaintiff, it was not extreme and outrageous as a matter of law. While offensive, defendants'

---

**8.** Because the Court finds no extreme and outrageous conduct, we need not address the

other elements. *See King v. AC & R Advertising,* 65 F.3d 764, 769 (9th Cir.1995).

conduct was not so egregiously outside the realm of civilized conduct to give rise to a verdict in the plaintiff's favor. In short, there is a complete absence of evidence to support the jury's finding of outrageous conduct.

Accordingly, defendants' Motion for Judgment as a Matter of Law is granted for the claim of intentional infliction of emotional distress.

## C. Retaliation Claim [9]

■ Section 12940(f) of the California Government Code makes it unlawful "[f]or any employer ... to discharge ... or otherwise discriminate against any person because the person has opposed any practices forbidden under [the FEHA]." The elements of retaliation that plaintiff needed to prove to the jury are: (1) she reasonably believed that Mr. Austin had sexually harassed her in violation of FEHA or the public policy of California; (2) plaintiff or someone acting on her behalf complained about or otherwise protested to defendants that she in good faith believed that Mr. Austin had sexually harassed her by making an offensive comment; (3) defendants took some adverse employment action against her after she complained or protested about the comment; (4) her complaints or protests were a motivating factor for the adverse employment action; and (5) the adverse action caused her injury, damage, loss or harm. Defendants argue that plaintiff failed to introduce sufficient evidence to prove any of the first four elements, and the failure of proof on any one of the elements should result in judgment as a matter of law in their favor.

The third element of a retaliation claim is that the defendants took some adverse employment action against plaintiff after

she, or someone on her behalf, complained or protested. In her opposition brief, plaintiff outlines the litany of alleged adverse action: AIG threatened to place plaintiff on a work program; AIG did not assign plaintiff a sufficient number of cases with which to meet her critical success goals, by giving her assignments to Mr. Sossaman; Mr. Coleman threatened to lay off plaintiff; an in-house AIG attorney, during an interview with Mr. Sossaman, asked whether Mr. Sossaman and plaintiff were having an affair; AIG issued two verbal reprimands that had no basis in fact; Mr. Coleman issued an inaccurate performance evaluation; Mr. Coleman promised plaintiff he would be there when she returned to work from her leave of absence, but was absent upon her return; and AIG took away assignments that were within plaintiff's territory. (*See* plaintiff's memorandum at 12–13). Within three weeks of the last of these events, plaintiff resigned from AIG. Defendants claim that as a matter of law, these decisions are not adverse employment actions.

■ The central issue to resolving this element is defining "adverse employment action":

Although the Ninth Circuit has never defined what is meant by "adverse employment action", a recent decision implies that the term should be construed restrictively. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994). In *Steiner*, the court held that an employee's transfer to a less desirable shift is "just barely—if at all—characterizable as 'adverse employment action' ..." *Id.* at 1465 n. 6. The court then mentioned examples more properly characterized as adverse, noting that "[plaintiff] was not demoted, or put in a

**9.** In evaluating plaintiff's claim the Court will examine California FEHA cases as well as federal Title VII claims. "Lawsuits claiming retaliatory employment termination in violation of [FEHA] are analogous to federal '[T]itle VII' claims (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ...) and are evaluated under federal law interpreting [T]itle VII cases." *Flait v. North American Watch Corp.*, 3 Cal.App.4th 467, 475–76, 4 Cal.Rptr.2d 522 (Cal.Ct.App.1992) (citing *University of Southern California v. Superior Court*, 222 Cal.App.3d 1028, 1035, 272 Cal. Rptr. 264 (Cal.Ct.App.1990); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 606, 262 Cal.Rptr. 842 (Cal.Ct.App.1989)).

worse job, or given additional responsibilities." *Id.* This litany suggests that an employment action is not "adverse" unless it affects the terms, privileges, conditions or duration of a plaintiff's job. *See Rooney v. Witco Corp.,* 722 F.Supp. 1040, 1046 (S.D.N.Y.1989). This definition would also encompass such actions as termination, the denial of a deserved promotion, a pay decrease, or a loss of benefits. An employer's decision which has intangible and indirect effects on an employee's status does not qualify as "adverse" action.

*Lefevre v. Design Professional Ins. Co.,* No. C–93–20720 RPA, 1994 WL 544430, at *1 (N.D.Cal. Sept. 27, 1994). *See also Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707–08 (5th Cir.1997) (verbal threat of termination, verbal reprimand, do not constitute adverse employment action because of their lack of consequence; Title VII designed to address ultimate employment decisions); *Kortan v. State of California,* 5 F.Supp.2d 843 (C.D.Cal.1998) (Title VII addresses ultimate employment decisions, including hiring, granting leave, discharging, promoting, and compensating). *But see, Jeffries v. State of Kansas,* 147 F.3d 1220, 1232 (10th Cir.1998) (rejecting both Seventh Circuit materiality test for adverse employment action and Fifth Circuit's *Mattern* standard); *Yartzoff v. Thomas,* 809 F.2d 1371, 1375–76 (9th Cir. 1987) (transfers of job duties and undeserved performance ratings constitute adverse employment actions); *Chisholm v. Foothill Capital Corp.,* 3 F.Supp.2d 925, 938 n. 5 (N.D.Ill.1998) (threat to fire plaintiff along with additional retaliatory acts is adverse, but threat standing alone is not); *Addy v. Bliss & Glennon,* 44 Cal.App.4th 205, 51 Cal.Rptr.2d 642 (Cal.App.1996) (transfer of some work, elimination of flex time, are adverse employment actions). In light of this case law, specifically *Steiner* and *Lefevre,* the Court holds that an employment action is not adverse unless it

affects the terms, privileges, conditions or duration of employment. The action must have more than an indirect and intangible effect on an employee's status. *See Horvath v. Dalton,* No. C–97–0441 MHP, 1999 WL 13714 (N.D.Cal. Jan. 7, 1999) (following *Lefevre–Steiner* definition of adverse employment action).

■ Individually, each piece of evidence that plaintiff submitted does not meet the *Steiner* standard for adverse employment action as a matter of law.[10] Plaintiff was not fired, demoted, docked pay or benefits, or transferred to a less desirable position, and her job responsibilities were altered only minimally. To the contrary, defendants produced evidence that at the time of her resignation, plaintiff was being considered for a raise. The terms, privileges, conditions or duration of plaintiff's job were not affected by defendants' actions.

The most serious of plaintiff's allegations is the defendants' threat to terminate her employment, a threat they rescinded on the next business day. Certainly, this did not affect the plaintiff's terms and conditions of employment, as there was no consequence to the threat. At worst, the threat caused plaintiff a weekend of stress, as the threat was made on a Friday and rescinded on the following Monday. A mere threat of termination, however, is not an adverse employment action. It had no effect on the terms, conditions or duration of employment. In *Andersen v. Pacific Bell,* 204 Cal.App.3d 277, 283, 251 Cal. Rptr. 66 (Cal.App.1988), the court held that in order to make out a case of retaliatory discipline, the plaintiff must actually have been disciplined by the defendant. "Plaintiffs who were not disciplined have no causes of action under any plausible interpretation of [retaliatory discipline cases]." *Id.* at 284, 251 Cal.Rptr. 66. The *Andersen* holding is applicable here as well. Defendants' mere threat to lay-off plaintiff cannot be an adverse employment action, especially when the threat is imme-

---

**10.** Plaintiff's counsel admitted this during oral arguments. The Court, however, will examine the actions that plaintiff alleges to be adverse.

diately rescinded. A temporally limited threat to take action is not the equivalent of taking that action.

Plaintiff also alleges that she received two oral reprimands in retaliation for her complaint of sexual harassment. one was for improperly spreading rumors over E-mail, and one was for improperly contacting a supervisor in New York, going outside the chain of command. Again, these do not meet the *Steiner* standard for adverse employment actions. These verbal reprimands did not affect the terms or conditions of plaintiff's employment. *See, e.g., Sweeney v. West*, 149 F.3d 550, 556–57 (7th Cir.1998). In *Sweeney*, the court held that two counseling statements, which stopped short of disciplining the plaintiff, but admonishing her to improve, were similar to, but less significant than negative performance evaluations. "If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well intentioned) given to an employee can be the subject of a federal lawsuit; a simple statutory prohibition against retaliation would be turned into a bizarre measure of extra protection for employees who—though they might genuinely need counseling—at one point complained about their employer." *Id.* at 557. Similar to the counseling statements, the two oral reprimands in the case at bar are not adverse employment actions.

Several other allegedly adverse actions are also easily disposed of. First, plaintiff complains that Mr. Sossaman was asked by an AIG in-house attorney whether he and plaintiff were having an affair. This had no effect on plaintiff's status as an employee. It does not even rise to the level of spreading rumors, because no one at AIG disseminated this information. Plaintiff only discovered the inquiry because Mr. Sossaman disclosed the informa-tion to her. Next, plaintiff complains that Mr. Coleman gave her an inaccurate performance review. This review, however, gave plaintiff the same performance rating as her previous review, which occurred before the complaint of sexual harassment. Furthermore, the inaccuracies that plaintiff complained of were immediately corrected by Mr. Coleman. This performance review, therefore, had no adverse effect on plaintiff's job, because it did not affect the terms or conditions of her employment.

Two of the allegedly adverse actions fail as a matter of law because of the lack of causal connection to the complaint of sexual harassment. Plaintiff alleges that defendants placed her on a work program and that they gave assignments to Mr. Sossaman to prohibit plaintiff from meeting her critical success goals. The threat to place plaintiff on the work program occurred before Mr. Sossaman reported plaintiff's complaint to Mr. Coleman. Similarly, defendants gave plaintiff's assignments to Mr. Sossaman before Mr. Austin even made his remark to plaintiff. There can be no causal connection when the adverse employment act occurs before, or is put in motion before, the plaintiff's complaint. *Shah v. Mt. Zion Hosp. and Medical Center*, 642 F.2d 268, 271 (9th Cir.1981) ("Because [plaintiff's] complaints regarding alleged discriminatory treatment did not occur until after he was discharged, there was no 'causal link' between his protests and the adverse employer action."). Therefore, even if these were adverse employment actions, plaintiff's retaliation claim based on these two actions fails as a matter of law because of the absence of causation.

While each action individually is not an adverse action, the plaintiff argues that the actions outlined above collectively amount to adverse employment action. This would be tantamount to a constructive discharge,[11] and therefore would qualify as

---

11. The jury was instructed that to award plaintiff compensatory damages for time after she resigned, it must find that she was con-structively discharged. Its award of $350,000 in economic damages demonstrates that it reached this conclusion. The court instructed

adverse employment action in the sense that it is the legal equivalent of an actual termination. *Jordan v. Clark,* 847 F.2d 1368, 1377 n. 10 (9th Cir.1988) (citing 3 A. Larson & L. Larson, *Employment Discrimination,* § 87.20 at 17–103 to 17–105 (1987)). The three-part test for constructive discharge was outlined by the Supreme Court of California in *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994).

First, there must be intolerable conditions: "The conditions giving rise to the resignation must be sufficiently *extraordinary and egregious* to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer. The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." *Id.* at 1246, 32 Cal. Rptr.2d 223, 876 P.2d 1022 (emphasis added). An employer is not obligated to provide a stress-free environment. "An employee is protected from ... unreasonably harsh conditions, in excess of those faced by his [or her] co-workers." *Id.* at 1247, 32 Cal.Rptr.2d 223, 876 P.2d 1022. "[A]dverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Id.*

The second inquiry in the *Turner* test is an objective standard: "whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." *Id.* at 1248, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (citations omitted).

The final inquiry focuses on the employer: "[T]he employee's resignation must be employer-coerced, not caused by the voluntary action of the employee or by condi-

tions or matters beyond the employer's reasonable control." *Id.* "[T]he employer must either deliberately create the intolerable working conditions that trigger the resignation or, at a minimum, must know about them and fail to remedy the situation in order to force the employee to resign." *Id.* at 1249–50, 32 Cal.Rptr.2d 223, 876 P.2d 1022. "An employer's actual knowledge of the existence of such conditions, and subsequent failure to remedy them, may constitute circumstantial evidence that the employer deliberately forced the employee to resign." *Id.* at 1249, 32 Cal.Rptr.2d 223, 876 P.2d 1022. This test furthers the goal that "a constructive discharge test should encourage an employer to take corrective action if notified of the intolerable working conditions." *Id.* at 1250, 32 Cal.Rptr.2d 223, 876 P.2d 1022.

■ To support her assertion of intolerable working conditions, the plaintiff put forth the pattern of activity outlined above. As a matter of law, this pattern does not rise to the level of egregious, intolerable conditions necessary to support a constructive discharge, and a reasonable person would not have been forced to resign. The jury was unreasonable in reaching the opposite conclusion. Plaintiff's situation merits comparison to several other cases in which the respective courts held that no intolerable conditions existed and that a reasonable person would not have resigned. Plaintiff's situation at bar is even less egregious than these cases.

In *King v. AC & R Advertising,* 65 F.3d 764 (9th Cir.1995), plaintiff argued that the following actions constituted intolerable working conditions: (1) his employment status changed to that of an at-will employee; (2) his managerial responsibilities were reduced; and (3) his base salary and

---

the jury that termination is constructive when "an employee resigns because an employer ... intentionally creates or knowingly permits to exist working conditions that are so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would have to resign. Adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation will be deemed intolerable." (RT at 851–52).

lucrative bonus program were reduced. The court held that these facts were insufficient to prove intolerable work conditions. *Id.* at 769. The court also held that his resignation was unreasonable as a matter of law. *Id.* The pattern of activity in *King* affected the terms of plaintiff's employment as the defendant altered his job responsibilities and salary. Nevertheless, the court found as a matter of law that the conditions were not intolerable. In the case at bar, the pattern of conduct is less egregious as the terms and conditions of plaintiff's employment were not altered.

Similarly, the facts in the *Turner* case are more egregious than the case at bar, and in *Turner*, the court found no constructive discharge. In *Turner*, the plaintiff produced evidence indicating that he: (1) observed illegal acts by his co-workers that he reported to management; (2) was reassigned in retaliation; and (3) was given a low performance rating. *Turner*, 7 Cal.4th at 1243–44, 32 Cal.Rptr.2d 223, 876 P.2d 1022. These working conditions are more egregious than plaintiff's, yet the court found that these charges, when considered together, did not constitute aggravating conditions or a continuous pattern of harassment. *Id.* at 1253–55, 32 Cal. Rptr.2d 223, 876 P.2d 1022.

Finally, in *Jordan v. Clark*, 847 F.2d 1368, 1376–77 (9th Cir.1988), the court found that the following pattern of conduct did not give rise to a constructive discharge (pattern of harassment): (1) delay in submitting promotion papers, (2) increase of duties without amendment of job description, (3) plaintiff not allowed to attend management conference, (4) position undermined by taking away of higher level duties, (5) poor performance evaluations and derogatory memos in file, (6) defendant drew up performance standards as a means of reviewing later performance unfavorably, (7) defendant directed plaintiff's work to other employees, (8) plaintiff given new position limited to clerical work. Again, this pattern is significantly more intolerable than the situation in the case at bar. In *Jordan*, the plaintiff's job responsibilities were altered and she was demoted. This, however, was not enough to warrant a finding of constructive discharge. In the case at bar, plaintiff was not demoted or docked pay, and she was not given a new position. Her conditions were not unreasonably harsh, nor were they any worse than the normal frustrations, challenges and disappointments faced at every job. *See also, Lefevre v. Design Professional Ins. Co.*, No. C–93–20720 RPA, 1994 WL 544430 (N.D.Cal. Sept. 27, 1994) (plaintiff's allegation of poor performance reviews, threat of verbal warning and harsh criticism, and retaliatory threats, all which happened after plaintiff engaged in protected activity, did not amount to objectively intolerable work conditions); *Casenas v. Fujisawa USA, Inc.*, 58 Cal.App.4th 101, 113–14, 67 Cal. Rptr.2d 827 (Cal.App.1997) (no constructive discharge where plaintiff alleged: (1) unfair performance evaluation, and (2) she was not considered for a promotion; additionally, there was no evidence of threats, reprimands, or intimidating remarks).

Under the standard set out in *Turner*, and consistent with other California case law, we find that the evidence submitted at trial is insufficient as a matter of law to prove intolerable working conditions. Plaintiff failed to demonstrate that her working conditions were so egregious that a reasonable person in her position would be compelled to resign.[12] Because work-

12. The Court also notes that plaintiff failed to prove the third element of constructive discharge. The *Turner* court noted that an employer's failure to remedy intolerable conditions may constitute circumstantial evidence of constructive discharge. 7 Cal.4th at 1249, 32 Cal.Rptr.2d 223, 876 P.2d 1022. Conversely, if an employer attempts to remedy the conditions, this is circumstantial evidence that there was no constructive discharge. Here, defendants cured most of the allegedly intolerable conditions. They rescinded the threatened lay-off and they corrected two inaccurate performance reviews. Furthermore, defendants' supervisory employees immediately reprimanded Mr. Austin. These actions

ing conditions were not intolerable, and plaintiff's resignation was unreasonable as a matter of law, she was not constructively discharged. Therefore, the Court finds that as a matter of law, there is a complete absence of evidence that any adverse action was taken by defendant.[13] Plaintiff has failed to prove her prima facie case as a matter of law and judgment on the retaliation claim is granted in favor of the defendants.

Accordingly, defendants' Motion for Judgment as a Matter of Law is granted for plaintiff's retaliation claim.

## IV. Conclusion

For the reasons stated above, the defendants' Motion for Judgment as a Matter of Law is granted. All other motions are dismissed as moot.

### *ORDER*

1. Currently pending is plaintiff's Motion for New Trial, or Alternatively, Reconsideration and/or Amendment or Correction of Judgment. In an Order and Opinion dated March 2, 1999, the Court granted defendants' Motion for Judgment as a Matter of Law, dismissed defendants'

Motion for New Trial, or Alternatively Remittitur as moot, and dismissed plaintiff's Motion for Attorneys Fees as moot. This Order: (1) amends the March 2, 1999 Opinion and Order, insofar as it deals with defendants' Motion for New Trial or Alternatively Remittitur, and (2) decides plaintiff's pending Motion for New Trial, or Alternatively, Reconsideration and/or Amendment or Correction of Judgment.

2. Federal Rule of Civil Procedure 50(c)(1) states:

If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.

In case the motion for new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for new trial has been conditionally

---

further support the Court's holding that there was no constructive discharge as a matter of law.

**13.** In light of *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Court is skeptical as to whether plaintiff reasonably believed she was sexually harassed, the first element of her retaliation claim. In *Faragher,* the Court stated as follows: "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile, or abusive, and one that the victim in fact did perceive to be so. We directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' Most recently, we explained that Title VII does not prohibit 'genuine but innocuous differences in

the ways men and women routinely interact with members of the same sex and of the opposite sex.' ... [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " 524 U.S. 775, 118 S.Ct. at 2283 (citations omitted). It should also be noted that the record is devoid of any evidence indicating that Mr. Austin repeated the allegedly offensive remark or any other similar remarks to plaintiff. And there is no evidence that Mr. Austin said anything else to her that she considered improperly sexual in context. In light of this holding, it is unlikely that plaintiff's belief that this singular comment constituted sexual harassment was objectively reasonable. *See Ellison v. Brady,* 924 F.2d 872, 878–80 (9th Cir.1991) (adopting the reasonable woman standard in determining whether belief was reasonable). The Court, however, need not reach this conclusion because its finding as a matter of law of no adverse employment action defeats the claim of retaliation.

denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court. The Court will now undertake this determination.

3. Rule 59(a) states: "A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" Fed.R.Civ.P. 59(a) (1999).[1] "The standard for granting a new trial under Rule 59 is less strict than that for judgment as a matter of law under Rule 50(b) for 'a new trial motion may be granted even if there is substantial evidence to support the verdict.' Nevertheless, the mere fact that the trial judge may have reached a different result than the jury is not a sufficient reason to grant the motion; the court should 'abstain from interfering with the verdict unless it is quite clear that the jury has reached an erroneous result.'" *Datskow v. Teledyne Continental Motors Aircraft Products,* 826 F.Supp. 677, 683 (W.D.N.Y.1993) (quoting *Bevevino v. Saydjari,* 574 F.2d 676, 683, 684 (2d Cir. 1978); 6A J. Moore, *Moore's Federal Practice,* ¶ 59.08[5] ). The Court may grant a new trial for several reasons.

Courts have the inherent authority pursuant to this rule to set aside verdicts in order to prevent a miscarriage of justice. The decision to grant a new trial lies within the discretion of the trial court. Though the underlying basis for a new trial is always to prevent injustice, there are a number of specific injustices which courts may find in support of granting a Rule 59 motion. These include a prejudicial error of law on the part of the court, a verdict which is against the weight of the evidence, damages awarded which are either too large or too small, or some palpable misconduct which has prejudicially affected the jury.

*Allred v. Maersk Line, Ltd.,* 826 F.Supp. 965, 969 (E.D.Va.1993), *rev'd in part on other grounds,* 35 F.3d 139 (4th Cir.1994).

■ 4. Defendants alleged in their Motion for New Trial that the verdict was against the weight of the evidence. Where the Court considers a Motion for New Trial based on insufficiency of the evidence, "a stringent standard applies." *Poppell v. City of San Diego,* Nos. Civ. 93–0100, Civ. 94–0653, 1996 WL 905905, at *3 (S.D.Cal. Nov. 5, 1996) (quoting *Venegas v. Wagner,* 831 F.2d 1514, 1519 (9th Cir. 1987)).

Thus although the decision rests within the discretion of the trial court, a "motion for new trial may be granted [based on insufficiency of the evidence] only if the verdict is against the 'great weight' of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'" *Venegas,* 831 F.2d at 1519 (quoting *Digidyne Corp. v. Data General Corp.,* 734 F.2d 1336, 1347 (9th Cir. 1984)). In fact, the Ninth Circuit has held that "if the jury's verdict is not clearly against the weight of the evidence, the trial court abuses its discretion in ordering a new trial." *McGhee v. Arabian Am. Oil Co.,* 871 F.2d 1412, 1420 (9th Cir.1989).

*Poppell,* 1996 WL 905905, at *3.

■ 5. The Court finds that a conditional grant of the motion for new trial is appropriate for both the intentional infliction of emotional distress claim and the retaliation claim. The jury had insufficient evidence of extreme and outrageous conduct to support the claim of intentional infliction of emotional distress. The jury

---

1. Plaintiff's claim arises under California law, but federal law determines whether a new trial should be granted. "The grant or denial of a new trial is a matter of procedure governed by [the Federal Rules of Civil Procedure] and not by state law or practice." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* § 2802 at 42 (1995).

also had insufficient evidence to support a finding of adverse action and constructive discharge to support the claim of retaliation. For both claims, the jury's verdict was clearly against the weight of the evidence. Therefore, the Court conditionally grants defendants' Motion for New Trial, in light of its grant of defendants' Motion for Judgment as a Matter of Law and its finding that the jury's verdict was not sufficiently supported by the evidence. *See* Fed.R.Civ.P. 50(c)(1) and 59.

6. Plaintiff has also brought a Motion for New Trial, or Alternatively, to Reconsider and/or Amend or Correct the Judgment. Plaintiff asks the Court to vacate its Order and Opinion of March 2, 1999 and reinstate the jury verdict, or immediately grant a new trial, under Rules 59(e) and 50(c)(2). In support of her motion, plaintiff alleges that the Court did not apply the proper legal standard of review to the evidence proffered at trial.

7. "Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold,* 170 F.3d 1200, 1207 (9th Cir.1999) (citing *School Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993)). Plaintiff has not presented the Court with any new evidence nor with any intervening change in the law.

8. Plaintiff maintains that the Court committed clear error by failing to view the evidence in a light most favorable to her. Contrary to plaintiff's assertions, the Court applied the legal standard as recently set forth by the Court of Appeals for the Ninth Circuit. "In a motion for judgment as a matter of law, facts are construed in a light most favorable to the nonmoving party. *See Lambert v. Ackerly,* 156 F.3d 1018, 1021–22 (9th Cir.1998)." (Opinion, at 1093). The plaintiff sets out seven pieces of evidence from the Court's opinion,

which in her view, do not conform to the proper standard. The Court does not agree with plaintiff's recitation of this evidence. The evidence the Court cited in its opinion was examined in the light most favorable to the plaintiff.

9. Even assuming, however, that plaintiff's assertions were correct, this would not be clear error warranting vacating judgment. The Court granted defendants' Motion for Judgment as a Matter of Law and conditionally grants its Motion for New Trial, because there was a complete absence of evidence to support claims of retaliation and intentional infliction of emotional distress. More specifically, no reasonable jury could conclude that defendants took any adverse action, that plaintiff was constructively discharged, or that defendants' conduct was extreme and outrageous. Five of plaintiff's "facts", which she claims the Court misconstrued, deal with the evidence of sexual harassment. While the Court is extremely skeptical as to whether plaintiff reasonably believed that she was sexually harassed as a matter of law, the Court did not rest its decision on this point. Therefore, even assuming the plaintiff's recitation of the evidence is correct, this does not meet the clear error standard needed to support her motion.

10. Plaintiff's final two "facts" deal with the litany of adverse action alleged by plaintiff. Plaintiff maintains that the Court misconstrued several of the adverse actions, and only considered three of the actions proffered by plaintiff. Plaintiff's recitation of these facts, and criticism of the Court's determination of the evidence is incorrect. The Court properly characterized this evidence, and plaintiff in her brief, mischaracterizes the Court's recitation of the evidence by only quoting selected portions. The Court examined at least nine allegedly adverse actions. (*See* Opinion, at 1097–98). The Court properly examined all of the evidence presented by construing it in a light most favorable to plaintiff and giving the plaintiff every fair and reasonable inference. Even with this

benefit, plaintiff's case lacked any evidence that would allow a reasonable jury to find in her favor. Additionally, even if the plaintiff's recitation of the evidence were correct, the differences with the Court's opinion do not result in a finding of clear error. Therefore, plaintiff's motion is denied, and the Court will not grant the relief requested, namely, vacating its Order and Opinion of March 2, 1999, and reinstating the jury verdict or ordering an immediate new trial.

NOW, THEREFORE, IT IS ORDERED that:

1. The Court's Order of March 2, 1999, insofar is it dismisses defendants' Motion for New Trial is hereby amended. Defendants' Motion for New Trial is GRANTED CONDITIONALLY. *See* Fed.R.Civ.P. 50(c).

2. Plaintiff's Motion for New Trial or Alternatively for Reconsideration and/or Amendment or Correction of Judgment is DENIED.

3. The Conclusion (Part IV) of the Court's Opinion, dated March 2, 1999, shall be amended to read as follows: "For the reasons stated above, the defendants' Motion for Judgment as a Matter of Law is granted. The defendants' Motion for New Trial is granted conditionally. The plaintiff's Motion for Attorneys Fees and Costs is dismissed as moot."