**Tracy L. ATTEBERRY, Plaintiff,**

v.

**The DEPARTMENT OF STATE PO-LICE, Sue Jansky, Kenneth Hall and James Howell, Defendants.**

No. 00–3275.

United States District Court, C.D. Illinois, Springfield Division.

Sept. 30, 2002.

1210

Mary Lee Leahy, Leahy Law Offices, Springfield, IL, for Plaintiff.

William E. Jarvis, Springfield, IL, For Defendants.

## OPINION

RICHARD MILLS, District Judge.

An employee experiencing a medical condition *without* medical restrictions is not similarly situated to an employee experiencing a medical condition *with* medical restrictions.

In 1999, Tracy L. Atteberry, f/k/a Tracy L. Garrett, requested to work light duty during her healthy pregnancy. Because her employer, the Illinois State Police

(ISP), failed to provide light duty detail to Plaintiff everyday, she sued claiming she was discriminated against based on sex and pregnancy in violation of 42 U.S.C. § 2000(e), *et seq.* (Title VII). She claims similarly situated employees were provided light duty everyday. Plaintiff also alleges that the ISP retaliated against her, in violation of Title VII, because she reported the discrimination to the ISP's EEO office and Plaintiff's collective bargaining representative. Lastly, Plaintiff claims two of her superiors, Suzanne Jansky and Kenneth Hall, violated 42 U.S.C. § 1983 and the Fourteenth Amendment's Equal Protection clause by treating her differently than other similarly situated male employees.[1]

The Court concludes Plaintiff's retaliation claim is legally insufficient. As to her discrimination claims, she has failed to prove she was similarly situated to any other employee given light duty. While Plaintiff was experiencing a medical condition, her condition resulted in no medically-based restrictions. Unlike her fellow employees who were physically incapable of performing some aspects of their jobs, Plaintiff's request for light duty was not based on any inability to carry out her duties. Plaintiff has not proven she was treated worse than any other employee who experienced a medical condition without medical restrictions. Therefore, Defendants' Motion for Summary Judgment is allowed.

## BACKGROUND

In April 1999, Plaintiff informed her superiors that she was pregnant. On April 22, 1999, Dr. George J. O'Neill, Plaintiff's obstetrician-gynecologist, drafted a letter that was forwarded to Plaintiff's superior,

1. Plaintiff seeks to dismiss Defendant James Howell from the case. Plaintiff also concedes her First Amendment claim is legally insufficient and agrees it should be dismissed.

Lieutenant Suzanne Jansky. The letter stated:

To Whom It May Concern:

Tracy Garrett is an obstetrical patient of mine. Her EDC is 11/29/99. She is to have light duties. She is not to carry a gun belt or do patrol work. She is to have a sedentary job until 6–8 weeks post-partum.

On April 23, 1999, Jansky informed Plaintiff that no light duty was available. On April 24, 1999, Plaintiff contacted the ISP's EEO office and her collective bargaining representative to report this alleged discrimination.[2] On May 6, 1999, a second letter written by Dr. O'Neill was given to Plaintiff's superiors. It stated:

To Whom it May Concern:

Tracy Garrett is an obstetrical patient of mine. Her EDC is 11/29/99. She is not to carry her gun belt or do patrol work. She is to have light duties. She may carry her gun. She may work where there is a restroom available. She may do truck inspections, investigations, she can walk and write tickets and do background checks.

Plaintiff alleges that despite this letter, she was physically capable of performing numerous functions with the ISP. Plaintiff claims she was discriminated against by Defendants when she was denied the opportunity to work available duties within her physical disability, denied training opportunities and required to use personal days, vacation days, holidays and sick time rather than work.[3] Plaintiff alleges that other employees who requested light duty were allowed to work and/or allowed to attend training and were not required to use personal time.

Plaintiff alleges after the ISP received her doctor's letters, she was forced to use 46 "500 time days." Defendants assert Plaintiff was provided 42 days of medical duty work status from May 5, 1999 to August 29, 1999 and only used 12 days of sick time. Plaintiff was assigned to the Illinois State Police Academy on August 30, 1999 where she worked until she gave birth to her child on November 16, 1999.

## ANALYSIS

To prevail on a motion for summary judgment, a defendant must prove that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reason-

---

**2.** Plaintiff claims she received a negative performance evaluation and a verbal reprimand in retaliation for reporting the discrimination.

**3.** The ISP labels each type of leave with a number. For example, sick time was labeled 515; holiday time: 509; personal day: 521; vacation time: 503. Collectively, these days off are called "500 time."

ably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505.

### A. *Sex and Pregnancy Discrimination*.

■ Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a). To prevail under the *McDonnell Douglas* burden shifting method, a plaintiff must show that (1) she was a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated males more favorably. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 204 (7th Cir.1996).

■ In 1978, Congress amended Title VII to extend protection to pregnant women: "[w]omen affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work...." 42 U.S.C. § 2000e(k). The Pregnancy Discrimination Act (PDA) was specifically designed to address the stereotype that "women are less desirable employees because they are liable to become pregnant," *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1045 (7th Cir.1999), and to insure that the decision whether to work while pregnant "was reserved for each individual woman to make for herself." *International Union, United Auto. Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 206, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). Nonetheless, employers are not required to give pregnant women special treatment; they must only treat them the same as all other employ-

ees. *See, e.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir.1998), *cert. denied*, 525 U.S. 870, 119 S.Ct. 167, 142 L.Ed.2d 136 (1998); *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994). The PDA "does not impose an affirmative obligation on employers to offer maternity leave or to take other steps to assist pregnant workers, but it does require the employer to treat the employee as well as it would have if she were not pregnant." *Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270, 274 (7th Cir.1996).

■ To prevail on a pregnancy discrimination claim, a plaintiff "must show that she was treated differently because of her pregnancy." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir.1996); *see also Marshall v. American Hosp. Ass'n*, 157 F.3d 520, 525 (7th Cir.1998). "An unlawful employment practice occurs whenever pregnancy is a motivating factor for an adverse employment decision." *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1010 (7th Cir.1997).

■ To prove a prima facie case of pregnancy discrimination, a plaintiff must prove the following: (1) she was pregnant; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1154–1155 (7th Cir.1997).

■ In order to establish a prima facie case of a violation of equal protection rights pursuant to § 1983, a plaintiff must establish that: (1) she is a member of a protected class; (2) she is similarly situated to members of the unprotected class; (3) she was treated differently from mem-

bers of the unprotected class; and (4) the defendant acted with discriminatory intent. *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 944–945 (7th Cir.1996); *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir.1993).

The common thread woven through all of Plaintiff's claims is the requirement that she show she was treated differently than other similarly situated, non-pregnant and/or male employees. Who is similarly situated to Plaintiff? She claims Debbie Schroder, William Long, Ed Buescher, and David Diller were similarly situated to her but treated more favorably.

Ms. Schroder was placed on light duty due to a broken arm, spinal surgery, and vocal cord surgery. Mr. Long was placed on light duty due to complications of his post-polio condition. Mr. Buescher suffered from a brain tumor that caused damage to his nerves and loss of muscle control of one side of his body. Mr. Diller was placed on light duty following knee surgery.

Each of these individuals experienced medical conditions which resulted in medical-based restrictions. They were incapacitated in some way due to their various ailments. There has been no evidence presented to this Court that Plaintiff was similarly incapacitated. Dr. O'Neill testified at length that Plaintiff's pregnancy did not interfere with her ability to perform her duties. Rather, he requested Plaintiff be placed on light duty because, in his opinion, Plaintiff's job was too dangerous to perform while pregnant—not because Plaintiff was physically incapable of performing her job.

Dr. O'Neill: I think it's common-sensical that a pregnant woman shouldn't be put in a position where not only her own life is one thing, but the life of an unborn child shouldn't be put at risk by her job duties, and that's why that letter was prepared.

Defendants' Attorney William Jarvis: Do you put all of your patients at that early stage in the pregnancy in light duty?

O'Neill: Well, my professional opinion, life begins at conception, so the answer to that is yes, if there's a need for it. But light duty in any other job profession doesn't incur the possibility of being shot, beat, God knows what else, particularly if you're on a patrol. I mean, people, officers get killed on duty. I mean, it's a perilous job that you do. . . . But this is a very unique job. I mean, this is a job where your life is in jeopardy every day you go out in a squad car. And to put an unborn child at that risk is, I think, morally reprehensible, as far as I'm concerned.

\* \* \* \* \* \*

Jarvis: And you did put definite restrictions about [the] gun belt, and I take it that has something to do with the weight?

O'Neill: Absolutely not. It's just to imply she's not to be on duty. You know, a patrol officer who is not carrying a gun is not going to be in a situation where her life is in jeopardy a few times a day.

\* \* \* \* \* \*

Jarvis: And what prompted you to prepare Exhibit 3 [O'Neill's May 6, 1999 letter], if you can recall?

O'Neill: This probably was at the patient's behest, trying to do something so she could continue with her job but in no way jeopardize her child. And, you know, granted I, you know, this is a first time for me as a doctor to have to deal with this. And the request is strictly tailored to the idea in mind if a duty was available for her to perform that would not allow her to be at

jeopardy as far as somebody pulling a gun on her or shooting her, in dealing with the criminal element. Obviously, there's a lot of things [that] could be done. I think we just tried to tailor the letter, and if I recall, it's been three years ago, I think Tracy came back and said I need something a little more explicit. It was mainly—I mean, I actually was probably somewhat overbearing as a gynecologist saying you can't put your baby's life at jeopardy and I think we agreed on that after discussing it. And this was an endeavor just to draw some limits so that her supervisor could find a place for her to work.

\*　\*　\*　\*　\*　\*

And in no way did this—any of this have anything to do with physical activities, at least early in her pregnancy. I don't have a problem with somebody doing something that requires physical effort. It was not that. It was strictly the situation that some loose guy or individual is going to pull a gun on her, shoot her, or she's going to be bodily harmed in some way because she's exposed to some risk. And when you pull somebody over, and you know that, you never know what to expect.

There is no dispute that Dr. O'Neill requested Plaintiff be placed on light duty and removed from patrol in an effort to protect Plaintiff and her unborn child from

the risks inherent in police work. While Dr. O'Neill's recommendation is understandable, it is not medical and is not based on Plaintiff's physical inability to perform her job while pregnant.

 Therefore, this Court finds Plaintiff experienced a medical condition without medical restrictions. She was pregnant, but there is no evidence she was physically affected by her pregnancy in a way that prevented her from performing the duties of her profession.[4] Plaintiff has presented no testimony that she was treated less favorably than any employees at the ISP who experienced medical conditions without medical restrictions. In addition, there is no evidence that Schroder, Long, Buescher, and Diller would fall into that category. As such, Plaintiff has failed to prove an element necessary to her discrimination claims under Title VII and § 1983. Defendants' Motion for Summary Judgment is allowed as to Counts I and III.

#### B. *Retaliation*

Plaintiff also alleges she was retaliated against for reporting ISP's actions to the ISP's EEO office and to her collective bargaining representative. Plaintiff claims two adverse employment actions were taken against her as a result of engaging in statutorily protected expression: Plaintiff (1) was counseled and berated by the District Commander, Ken Hall; and (2) received a negative evaluation from her immediate supervisor.

---

**4.** Although not the case here, doctors frequently place medical restrictions on women when their pregnancies prevent them from physically performing aspects of their jobs. For example, in *Kendra v. Brown*, plaintiff's nurse-mid-wife advised plaintiff not (1) to carry more than 10 pounds; (2) to push or pull more than 15 pounds; (3) to bend or stoop more than 20 times per hour; or (4) to climb any ladders, stairs or ramps. *Kendra v. Brown*, No. 94 C 6942, 1996 WL 172135, \*2 (N.D.Ill. April 10, 1996); *see Spivey v. Beverly*

*Enterprises, Inc.*, 196 F.3d 1309, 1312 (11th Cir.1999) (plaintiff was precluded by her doctor from lifting more than 25 pounds); *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 812 (5th Cir.1996) (plaintiff's doctor instructed her not to "push, pull, lift, and support over 150 lbs"); *Meier v. Noble Hospitality, Inc.*, 197 F.Supp.2d 1178, 1179 (N.D.Iowa 2001) (plaintiff's doctor recommended she not lift over 20 pounds and not work more than 8 hours per day).

■ Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. "Title VII's retaliation provisions make it unlawful to 'discriminate' against an employee because he has made a charge of discrimination. Common sense and the examples used in the statute's principal section, 42 U.S.C. § 2000e–2(a), exclude instances of different treatment that have little or no effect on an employee's job." *Sweeney v. West,* 149 F.3d 550, 556 (7th Cir.1998). Instead, § 2000e–2(a) makes it unlawful:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment ... or to limit, segregate or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee....

42 U.S.C. § 2000e–2(a). To present a prima facie case of retaliation, Plaintiff must demonstrate that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) there was a causal link between the protected expression and the adverse action. *Kersting v. Wal–Mart Stores, Inc.,* 250 F.3d 1109, 1117 (7th Cir.2001).

In early May, Plaintiff met with Captain Ken Hall. Plaintiff claims she was "counseled and berated" by Hall during this meeting when he stated he was concerned with her decision-making, that she had made poor choices, that this was the second time her personal life had affected her work, and that she was to discontinue using her new squad car. Plaintiff does not allege she was actually disciplined by Hall.

On July 12, 1999, Plaintiff received a negative "Promotional Skills Evaluation" from Master Sergeant J.K. Howell. On a scale of 1–10, the highest score Plaintiff received was a 5. In the Evaluation's narrative, Howell stated Plaintiff was unable to write clear and concise incident descriptions. In addition, Plaintiff exhibited an inability to listen and comprehend the description of an event or observation and to convey those facts effectively.

The question for the Court to decide is whether the ISP's actions rise to the level of adverse employment actions and are prohibited by Title VII.

In *Smart v. Ball State University,* the Seventh Circuit held that a negative performance evaluation was not an adverse employment action. *Smart,* 89 F.3d 437, 442 (7th Cir.1996). In *Sweeney,* the Seventh Circuit decided counseling statements or reprimands, without further discipline, were not adverse employment actions, stating, "[t]his circuit already has concluded that negative performance evaluations, standing alone, cannot constitute an adverse employment action." *Id.; see Smart,* 89 F.3d at 442. "The counseling statements are similar to negative performance evaluations, and arguably less significant." *Sweeney,* 149 F.3d at 557. "Absent some tangible job consequence accompanying those reprimands, we decline to broaden the definition of adverse employment action to include [counseling statements]." *Id.* at 556; *see Grube v. Lau Industries, Inc.,* 257 F.3d 723, 729 (7th Cir.2001) (holding that unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions).

■ Plaintiff presented no evidence the counseling or negative performance evaluation was accompanied by any tangible job consequence. Therefore, the clear-

cut guidance from the Seventh Circuit dictates Plaintiff's claim of retaliation, based on one negative evaluation and one counseling or reprimand, must fail.

*Ergo*, Defendants' Motion for Summary Judgment is ALLOWED.