**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 27**

Docket No. DA-0752-12-0339-I-1

**Socorro Thome,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

February 27, 2015

Deryn Sumner, Esquire, Silver Spring, Maryland, for the appellant.

Christopher M. Meissner, Esquire, and Mark W. Hannig, Esquire, El Paso, Texas, for the agency.

**BEFORE**
Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review and the appellant has filed a cross-petition for review of the initial decision that reversed her removal but denied her discrimination claims. For the reasons set forth below, we DENY the agency's petition, GRANT the appellant's cross-petition, AFFIRM the administrative judge's reversal of the removal action and her determinations that the appellant failed to prove her claims of disability discrimination and reprisal, VACATE the administrative judge's determination that the appellant failed to prove her claim that the agency discriminated against her based on her sex in violation of the Pregnancy Discrimination Act of 1978, and REMAND the case to

the regional office for adjudication of the appellant's sex discrimination claim as set forth in this Opinion and Order.

## BACKGROUND

¶2      Prior to her removal on April 3, 2012, the appellant was employed as a Customs and Border Protection Officer (CBPO) with the Bureau of Customs and Border Protection (CBP), at the Port of El Paso.  Initial Appeal File (IAF), Tab 12, Subtab 4c.  As a CBPO, the appellant was required to be available for rotating shifts and overtime assignments and to carry and maintain proficiency in the use of a firearm.  *Id*., Subtab 4n.

¶3      Following a positive pregnancy test on November 11, 2010, the appellant began light duty on the recommendation of her obstetrician/gynecologist (OB/GYN).  *See id*., Subtab 4j at 75, 78.  On July 6, 2011, the appellant gave birth to her son.  IAF, Tab 31, Appellant's Exhibit (Ex.) C.  Following a period of approved leave taken under the Family and Medical Leave Act (FMLA), the appellant returned to duty in the Port's Operations Support Office (OSO) on October 3, 2011.  IAF, Tab 12, Subtab 4k.  In a form dated October 14, 2011, the appellant's OB/GYN released the appellant to work without restrictions, with the proviso that she be provided frequent breaks for breastfeeding.  *Id*., Subtab 4j at 77.  The agency moved ahead to return the appellant to full duty, and on October 17, 2011, the OSO Supervisory Program Manager forwarded a firearm restoration letter to the Port Director for review and approval.  *Id*., Subtab 4k.

¶4      Subsequently, the appellant submitted an October 25, 2011 note from her son's pediatrician, who "highly recommended" that the appellant continue on light duty while breastfeeding due to a concern that "she may be exposed to contaminants such as lead, drugs, or infectious diseases that may be transmitted to the child through breast milk."  *Id*., Subtab 4j at 76.  In response to the Port Director's request for further documentation, the appellant provided a second note, dated November 17, 2011, in which the pediatrician stated that the appellant

planned to continue breastfeeding her son until he was 1 year old, and reiterated the concern that she might be exposed to the aforementioned contaminants which could be transmitted to her son through breast milk. *Id*. at 74. The pediatrician, in his note, further stated that he understood the appellant had asked to be relieved from alternating shifts and opined that "[t]his would be preferred in a breast-feeding situation as the alternating shifts will disrupt breast milk production because this is closely tied to sleep and circadian rhythm." *Id*. Finally, the pediatrician stated that it was "also preferred that [the appellant] not be exposed to lead fumes in an indoor gun range due to exposure to vaporized lead." *Id*. After being informed that the agency required medical documentation from her own provider, the appellant submitted a December 16, 2011 letter from her treating physician, who stated that it had come to her attention that the appellant is "exposed to lead fumes, drugs, and infectious disease that can be harmful to her newborn baby, through [her] breast milk," and that it was her medical opinion that the appellant should remain on light duty. *Id*. at 73. In a January 19, 2012 email, an agency Labor and Employment Relations Specialist stated that she had determined that the appellant's medical documentation was sufficient to support her request to remain on light duty while breastfeeding. IAF, Tab 31 at 38.

¶5 On February 7, 2012, the Port Director issued the appellant an option letter, directing her to return to full duty or resign. IAF, Tab 12, Subtab 4f. The option letter noted that the appellant had not fully performed her CBPO duties since November 12, 2010, and stated that the agency needed her to return to full duty. *Id*. The Port Director explained that CBP had a lactation program available to its employees but could not "with certainty" meet the appellant's doctor's recommendation that she avoid potential exposure to lead, drugs, and infectious diseases. *Id*. The Port Director informed the appellant that she must identify her choice within 5 days, and that, if she did not, the agency would "take action as

necessary to remedy the matter up to and including your removal." *Id*. The appellant refused to sign the option letter. *Id*.

¶6      The Port Director, in a February 16, 2012 memorandum to the Director of Field Operations (DFO) for the El Paso Field Office, recommended that the appellant be terminated "not based on any disciplinary reasons [but] rather on a non-disciplinary issue due to non-performance as a [CBPO]." *Id*., Appellant's Ex. I.  The Port Director related that the appellant began light duty due to her pregnancy on November 11, 2010, and that following the birth of her child she "continued on her non-performance of her duties" while on FMLA leave from August 30, 2011, to October 4, 2011. *Id*. The Port Director further noted that the appellant had been released for full duty on October 17, 2011, but had not returned to full duty. *Id*. He concluded: "CBPO Thome has not returned to full duty as a [CBPO] as of to [sic] date and has not performed as a full duty [CBPO] for approximately 15 months due to the continuation of her pregnancy and the birth of her child." *Id*.

¶7      By notice dated February 22, 2012, the Port Director (who was also the proposing official) proposed to remove the appellant on a charge of "Unavailability for Full Performance of Customs and Border Protection Officer Duties." IAF, Tab 12, Subtab 4e.  The proposal letter described the proposed removal as a "non-disciplinary adverse action." *Id*. Under the specification, the proposing official provided a chronology of events beginning November 12, 2010, when the appellant began working light duty during her pregnancy, and continuing through her nonselection of the options set forth in the February 7, 2012 letter. *Id*. The specification concluded, "You have been and are unavailable to fully perform the duties for which you are employed." *Id*. The proposing official stated that he considered the appellant's decision to breastfeed her infant child as a "personal choice," and that she could avail herself of the agency's lactation support program. *Id*. The proposing official further stated that he had considered that the appellant's "continued unwillingness or inability" to

fully perform CBPO duties "negatively impacts the operations of the Port" and that her removal would allow the agency to fill her position with an individual capable of performing full duty. *Id*.

¶8 The appellant responded through counsel to the notice of proposed removal. *Id*., Subtab 4d. Citing the Board's decision in *Edwards v. Department of Transportation*, [109 M.S.P.R. 579](#) (2008), the appellant contended that because there was a foreseeable end to her unavailability, i.e., her son's first birthday on July 6, 2012, and the agency did not have an urgent need to replace her before that date, her removal would not promote the efficiency of the service. *See id*. The appellant further contended that by proposing her removal, the agency had "effectively" punished her for her decision to care for her child, noting that the Surgeon General and numerous professional medical associations recommended that infants be breastfed for at least 1 year. *Id*.

¶9 By letter dated April 2, 2012, the DFO for the El Paso Field Office (who also served as the deciding official) notified the appellant of her decision to remove her effective the following day. IAF, Tab 12, Subtab 4c. The deciding official sustained the charge, noting that there was no dispute regarding the appellant's "fifteen month unavailability for full performance of [her] duties." *Id*. The deciding official further asserted that *Edwards* was distinguishable because, unlike the appellant in *Edwards*, the appellant here was medically able to fully perform her duties but chose to make herself unavailable. *Id*. The deciding official also denied that the agency had suggested, recommended, or ordered the appellant to stop nursing her child. *Id*. The deciding official asserted that the appellant's pediatrician's recommendation that the appellant be isolated from lead, drugs, and infectious diseases was "literally impossible to fulfill" and noted that the National Institute for Occupational Safety and Health (NIOSH) had

conducted a study of agency operations, which determined that "exposures for Agency employees were within tolerable limits."[1]  *Id*.

¶10        The appellant filed an appeal with the Board on April 9, 2012.  IAF, Tab 1. In addition to contesting the charge and penalty, the appellant alleged that the agency had violated her constitutional due process rights, unlawfully imposed discipline for taking FMLA leave or other approved leave, and engaged in unlawful discrimination based on sex and disability, as well as retaliation for protected equal employment opportunity activity.  IAF, Tab 35.  On July 6, 2012, the appellant's son turned 1 year old, and on August 13, 2012, the appellant filed a request to return to duty, noting that she had ceased breastfeeding her son and had received clearances from the pediatrician and her primary care nurse practitioner to return to work without restrictions.  IAF, Tab 17.  Ultimately, on February 15, 2013, the agency extended the appellant a conditional offer of employment for a GS-12 CBPO position.  IAF, Tab 106.

¶11        Following a hearing, the administrative judge issued an initial decision on March 22, 2013.  IAF, Tab 107, Initial Decision (ID).  The administrative judge reversed the removal action, finding that the NIOSH study, which was not cited in the proposal notice or included in the accompanying materials, constituted new and material information under *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368 (Fed. Cir. 1999), and that the deciding official's consideration of that information violated the appellant's due process rights.  ID at 13-17.  However, the administrative judge went on to find that the appellant had failed to establish her discrimination and reprisal claims.  ID at 17-26.  The administrative judge directed that, in the event either party filed a petition for

---

[1] The NIOSH survey concerned exposure to carbon monoxide, which was not among the risks identified by either the appellant's son's pediatrician or the appellant's treating physician.

review, the agency should provide interim relief in accordance with 5 U.S.C. § 7701(b)(2)(A), effective as of the date of the initial decision. ID at 28-29.

¶12        On May 23, 2013, the agency filed a petition for review, in which it contested the administrative judge's finding that the NIOSH study constituted new and material information. Petition for Review (PFR) File, Tab 7. Five days later, the appellant filed a cross-petition for review, contesting the administrative judge's findings on her sex and disability discrimination claims. PFR File, Tab 8. The appellant did not further pursue her claim of reprisal.[2] *See id.*

¶13        Subsequently, on May 30, 2013, the appellant filed a motion to dismiss the agency's petition pursuant to 5 C.F.R. § 1201.116(e), on the grounds that the agency did not attach a certification of compliance with the interim relief order, as required under 5 C.F.R. § 1201.116(a). PFR File, Tab 9. On June 4, 2013, the agency belatedly filed a certification of compliance, indicating that the appellant had been appointed to a CBPO position effective March 22, 2013, and would return to full duty on June 5, 2013. PFR File, Tab 10. In a separate pleading, the agency responded to the appellant's motion to dismiss. PFR File, Tab 11. In its response, the agency contended that 5 C.F.R. § 1201.116(a) does not require that a certification of compliance be filed simultaneously with an agency's petition for review. The agency further argued that, if its petition were dismissed, it "could rename its petition a *cross* petition for review, attach the certification of compliance, and refile both" within 25 days of the appellant's May 28, 2013 pleading. *Id*.

¶14        On June 17, 2013, the agency proceeded to do just that, refiling its petition as a "cross petition," with the certification of compliance attached. PFR File,

[2] Because the appellant on petition for review did not challenge the administrative judge's findings on her reprisal claim, we need not address this issue. In any event, even if we did, we would find no reason to disturb the administrative judge's well-reasoned findings on this matter.

Tab 13. That same day, the agency also filed a response to the appellant's cross-petition. PFR File, Tab 14. On June 19, 2013, the appellant moved to strike the agency's June 17, 2013 "cross petition," and on June 25, 2013, she filed a response to the agency's May 23, 2013 petition for review. PFR File, Tabs 16, 18. On July 3, 2013, the agency filed a reply to the appellant's June 25, 2013 response. PFR File, Tab 19. On July 8, 2013, the appellant filed a supplemental motion to dismiss the agency's May 23, 2013 petition, arguing that the agency had substantively failed to comply with the interim relief order. PFR File, Tab 20. Finally, on July 11, 2013, the appellant filed a reply to the agency's June 17, 2013 response to her May 28, 2013 cross petition. PFR File, Tab 21.

## ANALYSIS

### The disposition of pleadings on petition for review.

¶15      The Board's regulations provide that, where an appellant was the prevailing party in the initial decision, and the initial decision granted the appellant interim relief under 5 U.S.C. § 7701(b)(2)(A), an agency petition for review "must be accompanied" by a certification that the agency has complied with the interim relief order. 5 C.F.R. § 1201.116(a). Our regulations further contemplate that when, as here, an agency fails to submit the required certification with its petition, the petition may be dismissed with prejudice. *See* 5 C.F.R. § 1201.116(e).

¶16      However, the Board's authority to dismiss an agency petition under 5 C.F.R. § 1201.116(e) is discretionary, not mandatory. *See Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 11 (2013). Given the disposition of this appeal, we find it appropriate to DENY the appellant's motion and supplemental motion to dismiss the agency's petition for review.[3] We GRANT the appellant's

---

[3] The appellant's supplemental motion to dismiss was filed more than 25 days after the date of service of the agency's petition for review and was therefore untimely. *See*

motion to strike the agency's June 17, 2013 "cross petition," which is duplicative of its original petition for review. We have considered the appellant's response to the agency's petition for review, the agency's reply to that response, and the agency's response to the appellant's cross-petition. However, we do not consider the appellant's reply to the agency's response to her cross-petition for review, as our regulations do not allow for such a pleading. *See* 5 C.F.R. § 1201.115(a).

The administrative judge correctly found that the agency failed to provide the appellant due process.

¶17    Due process requires that a tenured government employee receive "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story" prior to being removed. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). If the agency fails to provide these rights, the action must be reversed. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 680-81 (1991). In this case, the administrative judge found that the agency failed to put the appellant on notice of the evidence on which it relied because the deciding official considered new and material information in the form of the NIOSH study. ID at 10-17; *see Stone*, 179 F.3d at 1377. We need not decide whether the administrative judge was correct in that finding because we find the agency violated the appellant's due process rights by failing to provide adequate notice of the charges against her.

¶18    At the hearing, the deciding official testified that agency policy distinguishes between "disciplinary" actions, i.e., adverse actions based on misconduct charges, and "nondisciplinary" actions. Hearing Transcript (HT) at 277-78 (Dec. 28, 2012). According to the deciding official, disciplinary actions generally involve an investigation, development of a case file with supporting information, and referral to a disciplinary review board for

---

5 C.F.R. § 1201.116(d). We have considered the motion, however, as it appears to be based on information that was unavailable before the filing deadline. *See id*.

determination of the appropriate action. *Id*. at 279. However, the deciding official indicated that when an employee has not committed misconduct but is simply unavailable for work the agency may bypass these procedures and impose a nondisciplinary action under the direct authority of 5 C.F.R. Part 752. *Id*. at 277.

¶19 In the notice letter, the proposing official represented that the proposed removal was a nondisciplinary adverse action based on a charge of Unavailability for Full Performance of Customs and Border Protection Officer Duties. IAF, Tab 12, Subtab 4e. The proposing official explained that, under the specification, the appellant had been absent or on light duty since November 2011, but he did not allege any affirmative misconduct on her part, and it is undisputed that the agency did not follow its procedures for misconduct-based actions. *Id*. While the proposing official referred elsewhere in the notice to the appellant's "unwillingness or inability" to perform full-time CBPO duties, he did not indicate that the action was based specifically on her unwillingness to return to full duty, as opposed to her unavailability per se. *Id*.[4]

¶20 In the decision letter, the deciding official again indicated that the action was being taken for nondisciplinary reasons. *Id*., Subtab 4c. However, the deciding official repeatedly testified at the hearing that the appellant was removed because she "refused" to return to full duty. HT at 156-57, 174, 245, 246, 249, 280 (Dec. 28, 2012). The proposing official testified to the same effect. HT at 252 (Nov. 29, 2012). The testimonies of both the proposing and deciding officials demonstrate that, contrary to the proposal notice, the appellant's removal was in fact a disciplinary action based on a charge of misconduct, namely, her alleged refusal to return to full duty.

---

[4] The agency now maintains that the "fundamental question" of the case is whether the appellant's unavailability for full duty was the result of her "unwillingness" rather than her "inability." IAF, Tab 21 at 11.

¶21        The deciding official embraced the contradiction, stating "I don't think that she engaged in misconduct. I think that she simply refused to perform her job." HT at 280 (Dec. 28, 2012).   When the administrative judge asked the deciding official why she did not consider the appellant's refusal to constitute misconduct, the deciding official offered the following explanation:

> I would consider misconduct—I mean, generally the way we look at misconduct cases are where we say she had been ordered, you know, to return to full-duty and she had disobeyed an order, then we have a specific charge of misconduct.

*Id.*   We find, however, that the February 7, 2012 option letter, which offered the appellant the Hobson's choice of returning to full duty or ending her employment with the agency, was tantamount to an order to return to full duty.  The allegation that the appellant "refused" to select the former option is indistinguishable from a charge of failure to follow instructions.

¶22        We conclude that, whether by mistake or for the sake of administrative convenience, the agency misrepresented the basis for its action.  Furthermore, nothing in the appellant's reply to the proposal notice suggests that she believed the agency intended to remove her based on her refusal to return to full duty, as opposed to her unavailability per se.  *See O'Connor v. Department of Veterans Affairs*, 59 M.S.P.R. 653, 658 (1993) (in determining if an employee has received adequate notice of a charge, the Board examines the employee's reply to see whether the employee defended against it).  Rather, her reliance on *Edwards* demonstrates that she took the agency's statement of the charge at face value. The action must therefore be reversed because the agency failed to provide the appellant her due process right to advance notice of the basis for the proposed action and an opportunity to respond.  *See id.* at 656-58.[5]

---

[5] Having found that the agency violated the appellant's due process rights, we do not reach the question of whether the agency committed harmful error by failing to follow its internal procedures for adverse actions based on misconduct.

<u>The administrative judge correctly determined that the appellant failed to prove her claim of disability discrimination.</u>

¶23    As a federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973.  However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation.[6] *Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 36 n.3 (2007); 29 C.F.R. § 1614.203(b).  Those regulations are found at 29 C.F.R. Part 1630.

¶24    To prove disability discrimination, the appellant first must establish that she is an individual with a disability as that term is defined in the ADAAA and the EEOC regulations. *See, e.g.*, *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012).  The appellant may prove that she has a disability by showing that she:  (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1).  An impairment is considered to be a disability if it substantially limits an individual's ability to perform a major life activity as compared to most people in the general population.  29 C.F.R. § 1630.2(j)(1)(ii).  Major life activities include, but are not limited to, caring for oneself, performing manual tasks, eating, lifting, bending, concentrating,

---

[6] The ADAAA, which expanded the definition of disability, became effective on January 1, 2009. *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 17 (2010) (citing Pub. L. No. 110-325, 122 Stat. 3553 (2008), codified at 42 U.S.C. § 12101 et seq.).  Thus, the ADAAA and the amended regulations implementing the ADAAA apply in this case. *See Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 10 (2010).

communicating, and working; major life activities also include the operation of major bodily functions. 42 U.S.C. § 12012(2). The term "substantially limits" is construed broadly in favor of expansive coverage, to the maximum extent permitted under the ADA, and is not meant to be a demanding standard. 29 C.F.R. § 1630.2(j)(1)(i).

¶25 The appellant contends that she was an individual with a disability because her lactation substantially limited her in the major life activity of working, as she was unable to safely breastfeed her child while performing full duty. PFR File, Tab 8 at 19-20. We disagree. The EEOC has clarified that pregnancy is not an "impairment" within the meaning of the ADA and is therefore not itself a disability, although pregnancy-related impairments (e.g., pelvic inflammation) may be covered. 29 C.F.R. Part 1630 app. § 1630.2(h); EEOC Enforcement Guidance, Pregnancy Discrimination and Related Issues (Enforcement Guidance), § II.A (July 14, 2014). Similarly, we find that lactation is not an impairment and therefore not itself a disability. *See Bond v. Sterling, Inc.*, 997 F. Supp. 306, 311 (N.D.N.Y. 1998) ("It is simply preposterous to contend a woman's body is functioning abnormally because she is lactating."). The appellant has not alleged that she herself suffered any medical impairments relating to lactation, and, to the extent that she contends that breastfeeding was a matter of medical necessity for her son, "any disability would be that of her child alone." *Id.*; *cf. McNill v. New York City Department of Correction*, 950 F. Supp. 564, 569-80 (S.D.N.Y. 1996) (malfunction of infant's palate necessitating breastfeeding was not a pregnancy-related medical condition of the mother). We conclude the appellant has not established that she is a person with a disability and that her claim of disability discrimination therefore fails.

<u>We need not address at this juncture whether the administrative judge correctly determined that the appellant failed to establish her claim of sex discrimination under Title VII and the Pregnancy Discrimination Act.</u>

¶26        The Pregnancy Discrimination Act (PDA), Pub. L. No. 95-555, 92 Stat. 2076 (1978), codified at 42 U.S.C. § 2000e(k), amended Title VII of the Civil Rights Act by expanding the definition of sex discrimination to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id*. Lactation is a pregnancy-related medical condition for purposes of the PDA. *Equal Employment Opportunity Commission v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 (5th Cir. 2013); Enforcement Guidance, § I.A.4(b). Thus, Title VII protects the appellant from discrimination based on her status as a nursing mother. *See Puente v. Department of Homeland Security*, EEOC Appeal No. 07A30018, 2003 WL 22432740 (E.E.O.C. Oct. 15, 2003); *see also O'Brien v. National Security Agency*, EEOC Appeal No. 01951902, 1997 WL 291810 (E.E.O.C. May 27, 1997).

¶27        The PDA further specifies that women affected by pregnancy, childbirth, or related medical conditions must be treated the same for employment-related purposes as other persons not so affected "but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). According to the EEOC, a violation under this provision is established where all the evidence, on the whole, establishes that an employer has treated a covered employee less favorably than an employee who is similar in his or her ability or inability to work, but is not covered under the PDA. Enforcement Guidance, § I.B.1. It is undisputed that the appellant's own medical condition did not render her physically unable to perform full duty and that her request for light duty was based solely on concerns about the health and safety of her child. *See Atteberry v. Department of State Police*, 224 F. Supp. 2d 1208, 1214 (C.D. Ill. 2002).

¶28        Nonetheless, the circuit courts have been divided on the question of whether the PDA permits a "pregnancy neutral" policy of granting light duty

exclusively to employees who have on-the-job injuries and/or disabilities under the ADA. *Compare, e.g.*, *Young v. United Parcel Service, Inc.*, 707 F.3d 437, 446 (4th Cir. 2013), *cert. granted*, 134 S. Ct. 2898 (July 1, 2014), *with Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996). The EEOC has taken the position that such a policy is impermissible and that an employer cannot lawfully deny or restrict light duty based on the source of a pregnant employee's limitation. Enforcement Guidance, § I.C.1(b).

¶29     Consequently, we believe that a decision on whether the administrative judge correctly determined that the appellant failed to establish her claim of unlawful sex discrimination would be premature at this time, inasmuch as the Supreme Court is currently considering a potentially dispositive PDA issue in a pending case, *Young v. United Parcel Service, Inc.*[7] Accordingly, we REMAND the appellant's sex discrimination claim to the regional office for further adjudication upon the Supreme Court's issuance of its decision in *Young*.

¶30     Also, because we agree with the administrative judge that the removal action should be reversed, the agency will have an opportunity to later take—or not to take—a constitutionally-correct removal action. Should the agency take a second removal action, the appellant will again be able to raise a claim of PDA-based sex discrimination if she believes the agency's second removal action was taken on that basis.

<u>ORDER</u>

¶31     We REMAND the appellant's PDA-based sex discrimination claim to the regional office for further adjudication in accordance with this Opinion and Order and upon the Supreme Court's issuance of its decision in *Young*. On remand, the

---

[7] Oral arguments in the *Young* case were held on December 3, 2014. Both parties in this case were provided an opportunity to brief what effect, if any, the Supreme Court's *Young* decision might have on the appellant's allegation of sex discrimination. *See* PFR File, Tabs 25-28.

administrative judge shall dismiss this case without prejudice to be automatically refiled within 30 days of the Supreme Court's issuance of its decision in *Young*. The administrative judge shall issue a new initial decision incorporating by reference our findings on the appellant's removal and disability discrimination and reprisal claims so that the appellant will have a single decision with appropriate notice of appeal rights addressing all of her claims.[8]  *See Goldberg v. Department of Homeland Security*, 99 M.S.P.R. 660, ¶ 12 (2005).

¶32        Because we cannot uphold the appellant's removal regardless of the findings on the sex discrimination claim on remand, and despite the absence of a final decision on that claim, we ORDER the agency to cancel the removal and retroactively restore the appellant effective April 3, 2012.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶33        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest

---

[8] The Board's regulation at 5 C.F.R. § 1201.203(d) provides that any request for attorney fees must be made no later than 60 days after the date on which a decision becomes final.  In this case, the time limit for filing a motion for fees will not begin to run until the decision on remand is final. *See Ginocchi v. Department of the Treasury*, 53 M.S.P.R. 62, 73 n.9 (1992).  Similarly, an appellant who prevails in an appeal before the Board based on a finding of discrimination may recover compensatory damages from the agency pursuant to the Civil Rights Act of 1991. *See Hocker v. Department of Transportation*, 63 M.S.P.R. 497, 505 (1994), *aff'd*, 64 F.3d 676 (Fed. Cir. 1995) (Table).  Thus, if, on remand, the appellant prevails based on a finding of discrimination, she may submit a request for compensatory damages to the administrative judge in accordance with her instructions.

due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶34     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶35     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶36     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

|  | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.
2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.
3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.
4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.
5. Statement if interest is payable with beginning date of accrual.
6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.